3-19-0271 Matthew Schreck and Jamie Adcock-Schreck Appellants v. Mark Adcock-Applely Good morning Good morning, your honors Good morning, your honor Mr. Schreck, would you... We do have a third panel member Justice Holdredge is not able to be here on the Zoom this morning He will be listening to the argument and will participate in the discussion and in the decision Okay? Thank you Thank you Mr. Adcock, would you like to proceed? Mr. Schreck I'm sorry I'm sorry Mr. Schreck That is all right Yeah Good morning or afternoon My name is Matthew Schreck. I represent the appellants or the plaintiffs in this case I'm the father of the two minor children that we're here to talk about today, as well as the husband of the co-trustee of the Descendants Trust To give the court some background, I know the court has had the opportunity to review the pleadings and the record, etc. But just to avoid any confusion, I want to at least give a framework, at least the way I've been using terminology in this case This matter involves two sets of trusts The first set of trusts, which I call the Minors Trust, are the trusts that come from the will of James Adcock, who passed away in May of 2011 The second set of trusts, which I call the Descendants Trust, are two irrevocable trusts that were issued by Grace Adcock and Jim Adcock in connection with some property that they had owned and formed a trust and LLC revolving those. Those were created in December of 2012 Grace Adcock passed away shortly after that in May of 2013 The action that we had brought on behalf of the minors, as well as Jamie Schreck, the co-trustee of the Descendants Trust, had three counts The first one was for an accounting of the Minors Trust Count two was for the removal of the trustee of the Minors Trust And the third count, which was brought on behalf of both plaintiffs, was seeking an accounting for the Descendants Trust We have obviously filed this appeal for several different reasons But I'm going to take the opportunity to spend most of my time talking about the court's rulings on the motion for summary judgment I think the issues involving discovery and the pleadings, for the most part, speak for themselves in the pleadings and in the record, as well as some of those things dovetail over into my arguments on the motion for summary judgment The defendant initially filed a motion for summary judgment before discovery had closed in this matter As part of that motion for summary judgment, he included an affidavit and referenced some pleadings Other than that, there was no other significant discovery attached to that motion And there was minimal, if any, authority cited to support that motion for summary judgment After the discovery that was completed in this matter was completed, the plaintiffs moved for summary judgment of their own on all three counts In the trial court, the court, after reviewing the submissions, denied the plaintiff's motion for summary judgment and granted the defendant's It is our position that the trial court erred for multiple reasons, one of which is we do not believe the court complied or followed the appropriate standard One of the things that was presented by defendant in briefs was that because both summary judgments have been filed, somebody has to win and the case goes over The case law, the Pellet v. Pellet case, which I've cited in my briefs, 978 N.E. 2nd, 1000, indicated that mere filing of cross motions for summary judgment doesn't establish that there's no issue material fact Nor does it obligate a court to render summary judgment Ultimately, if the trial court believed that the plaintiffs had not submitted enough evidence to support summary judgment, then it should have denied that motion and not granted the defendants The defendant's motion, it is our position, lacked any legal support Quite frankly, it is our position the court should have granted the plaintiff's motion for summary judgment We also believe that the court considered things, or at least we believe they considered things that should not have been considered One of the things that has been suggested by the defendant in the briefs is that there was a box or boxes of documents provided to the court that are not in the appellate record and were not submitted to us, which I can assume what was in those, but that is not part of the record Ultimately, it is our position on the motion for summary judgment that the court should have granted each count as concerns all of the accounts. The law concerning trust is very clear Trustees, in this case, Mr. Adcock has admitted that he's a trustee of both of the sets of trusts involved Mr. Adcock has legal obligations and duties, and trustees have a higher standard under the case law than other agents or representatives, etc. They have the highest degree of fiduciary duty, they have to work in good faith, they have a duty of transparency, duty of loyalty, etc. Now, we have spent great time and effort weighing all that in our briefs, and I will not go through every case, but I would like to focus on some of the key duties that a trustee owes, specifically a duty to be transparent, which dovetails into an accounting The whole purpose under the statute, which has been amended, but the statute in place, the probate statute regarding trusts, required an annual accounting In this case, although the parties were initially working together, no accounting was ever provided until it was requested sometime in 2014 Now, which trusts are you talking about? Right now, I apologize, Your Honor, I'm talking primarily right now about the minors' trusts, and for the most part, most of my arguments at the moment will be about the minors' trusts, I'll probably get to the sentence towards the end And you're saying that you did not get accountings of those trusts? Initially, we did not. We eventually got some, and they raised concerns, which led to the filing of the suit, and subsequent accountings, as we've set forth in our brief, we do not believe were fully adequate and do not show complete transparency Over time, we have gotten additional information, some of that was required by court order, such as legal fees and bills, etc. So there are some minor issues with the accountings early on, but the biggest thing, which, as we sit here today, although we have some legal fees and bills for the minors' trusts, we do not have all And there are several discrepancies in the minors' trust accounting that raise various issues which led to this lawsuit, some of which I'm going to get to here in a moment The second issue that we have brought this action for is the defendant, at various times, exceeded his authority in obligations and duties as a trustee A trustee is bound by the documents and statutes and cannot go above and beyond that One of the things that occurred several years ago was Mr. Adcock decided to change the children's health insurance Ultimately, we were able to get that corrected, but in doing so, he demonstrated not only his lack of understanding of what he can and can't do, but his brass nature of actions to do what he, quote unquote, thought he could do So what said that he couldn't do what he did? Well, he was making decisions about what insurance the children should have, health insurance without our consent Ultimately, we were able to cancel that insurance, but he demonstrated the fact that he went beyond what he could do He's not the child's parent. He did, quite frankly, one of the things that we have raised is when he made that decision, he didn't have the information he would have needed to make a decision Because of that, he didn't even make a decision that was in the best interest of the children He didn't know what their medical conditions were, what their primary doctors were, what treatment they would require Didn't know what their, at least according to him, didn't know what their current insurance was He was merely trying to, quote unquote, get a cheaper option Okay, as I understand the briefs, you asked him for different insurance because the COBRA is limited in time, right? That is not correct, Your Honor What we requested is that he pay the COBRA. He had actually had the documents. I personally was there and handed him documents several months before that In fact, for a period of time, he was paying the COBRA insurance. That had an expiration date, but it was several months out When we asked him to continue to pay the COBRA, we were in the process of getting new insurance So we would have no longer needed it, but there was a period of time we continued to need that And he made a decision to get a different set of insurance without consulting us And all documents at that point would have been sent directly to him And he's not their parent, so he can't exactly waive HIPAA and other things and get information from them So there were various different things that he did regarding that that we believe are improper and went beyond what is permitted for him as a trustee Okay, and I guess what I'm trying to find out is, what is it that you're using as the measuring stick for what's permitted? Well, decisions on what insurance a child should have is not left to somebody that is a trustee over certain funds That's a decision made for the parents or guardian Those are medical decisions of what is necessary for an individual, and he is not their guardian, he is not their parent He's got no, other than being a trustee over certain funds, he had no legal authority or right to make those type of decisions The next issue that we discovered during the initial accounting, quite frankly, is the one that I think is the one worth the most time spending about Without notifying anyone, Mr. Adcock entered into a loan where he loaned the Miners Trust funds, or at least a portion of it, $50,000 from each, to his father Okay, the cases that we have cited, and I apologize for mispronouncing the name, Mappapahu, I apologize for that name, and the Wrenchkin case, both discuss instances of where a trustee loaned money from the trust And did it without notifying anybody, those cases stand for the proposition that when a trustee is making a loan, he's got to at least notify the beneficiaries or consult with somebody so that if there's any objections or issues that they can be raised In this case, a defendant never advised, consulted, or notified the miners or their parents of the loan. In fact, we didn't learn about the loan until several months after the transaction transpired The reason that ends up becoming an issue is that loan ultimately is not in the children's best interest. At the time, Mr. Adcock was wearing multiple hats. He was the trustee of the Miners Trust, he was a trustee of a third miner He was the power of attorney for his father, E. James Adcock. He was the secretary and vice president of the family business, and he also Did the trust suffer irreparable harm from that? It's my understanding the loan was paid back with interest The loan was paid back, but however, all of the legal fees for that loan were charged to the miners. That's several thousand dollars, which is outlined in there In addition, a defendant has taken the position that there was interest made. The records speak for themselves with the accountings as far as what they were earning beforehand He did it under the guise of trying to diversify the funds, but quite frankly, it is apparent that he did that to help his father, slash him handling his father's affairs For the simple fact that the loan documentation was done in such a way that it could have been a lot worse if it had not been repaid back. And quite frankly, the motivations of why it was paid back, we may never know because it was paid back after the lawsuit was filed After we were raising that issue. Doesn't that fall within his discretion? Making the loan? I would suggest that the case law says that if he's going to make a loan, it's got to, one, benefit the trust. Two, it's going to help for a trust purpose. It's got to be with consent or at least notice, and it has to be done in the proper manner. A trustee has a higher duty. So it's not that loans are forbidden, but this particular loan should never have been issued because the standard of a work-a-day world, which is basically what average people do, is the lower standard. He has a higher standard. In an average work-a-day loan, if you were to go get a loan from a bank, there's going to be proper documentation. It's going to be recorded. It's going to be setting forth payment dates and a payment schedule. There's going to be adequate collateral. And there's going to be a determination of whether or not the borrower could actually repay the loan. In this particular case, he failed in all those respects. Mr. Shrek, I'm sorry, your time is up. Is that a red light? Yeah. Your time is up. You have five minutes after Mr. McQuillan has finished his argument for rebuttal. Mr. McQuillan, you may proceed. I can't hear you. Is your microphone muted? Clerk.  Okay. If it may please the court and Mr. Shrek, a couple basic propositions here is that on appeal, the question is not just did the circuit court commit any error, which were not conceded, but did the error prejudice a party? And that has not and cannot be shown. The reasons for that are, I need to go back and look at the complaint itself as to what was requested. And this applies to both the third amended complaint that was in play and also to Mr. Shrek's fourth proposed amended complaint. In count one, A of the wherefore, the request was that Mark Adcock be ordered to account for all transactions made on behalf of the respective trust. As you've seen in this, not only had Mark Adcock provided accountings as they went along, but Judge Anderson, I guess in an abundance of caution, entered an order reiterating that Mark Adcock had to supply accountings pursuant to a request to produce. Which were done and those are in the record. And that's what the judge reviewed when he went over those and issued his ruling that plaintiffs have all accounting documents and information to which they are entitled, either voluntarily delivered or produced through the discovery process. There was no material question of fact on that, because in fact, the plaintiff through their attorney had admitted that the only thing, and this is Mr. Shrek's deposition as a plaintiff. The only thing that are missing as to the accountings for the miners trust that would make them inadequate, in his opinion, were legal bills for 2017, which he acknowledged did not exist. The trusted paid no money for attorney fees. I'm a terrible bill or I hadn't built, so there was nothing there. So that is a judicial admission by not only the party's attorney, but by the party itself about a concrete fact within that party's knowledge. And our Supreme Court has said in a state of Renwick, once made a judicial admission conclusively binds the party to the statement made, and the party cannot later contradict or explain the statement. So, they were given the things in real time. It. Here's what's interesting we pointed out in there that the plaintiffs did nothing in real time. They were sent an initial accounting for 2012 through 2014 and 2015 never made a complaint about in 2016 they were sent the accounting for 2015. Only comment they made was it. And this is when it was disclosed about the loan that the loan had been paid back. They said we want that money to go, not into the bright directions account, which they specified at the start of this, but into the investment accounts. That was it. That was it. We did another accounting in 2017 we did another one in 2018, and nothing in real time was ever raised by Mr Shrek, or the other plaintiff that there were any issues with them. The first time issues came up. We're at his deposition in 2018 he started raising things. So, this is not a case about issues being arising in real time and being dealt with. In fact, we had produced and he talks about, oh, there were documents that were not part of the record. They were, because we with each accounting it said there are, there were things like prospectus all this stuff you get from all these different accounts for the funds and everything were made available to him and he admitted he never looked at it. And this is in his deposition. I believe I got sufficient documents in the documents attached to those particular correspondence. That being two of the, the last two accountants. So, when the judge ruled that plaintiffs have all accountings, to which they are entitled. They did. And there was no question of material fact about that. All these other issues he's raising about the accounting deal talk about parts of things that are not part of the record. He keeps talking about inaccuracies when I raised that in my response that it wasn't put anywhere. He referred us back to other documents facts and other documents to admit that simply said, there are inaccuracies, he hasn't did not supply anything. So, the trial judge reviewed the accountings deemed they were proper. The second part of the lawsuit was that. And so, to reiterate on that it was a very narrow issue raised by the plaintiffs account for all transactions made on behalf of the respective trust. That's what was done on the next count for the breach of fiduciary duty. They simply said breaches fiduciary duty. We went through in the briefs, in terms of all the different points we went through all the trustees and trust act. We went through the prudent investor law, all the other things as to what he had done. And the thing that the judge recognized is that there were no damages. And in order to have a cause of action for breach of fiduciary duty. You have to have four components. The last three are damages and damages approximately caused by the action. We're no damages. He talks about some attorney fees that were never brought up in real time. And we pointed out, the only thing in the record indicates $875, which, if, and the trust of the minors, and Mr adcock were represented by two separate attorneys at the time to avoid any potential issues. Another attorney was retained to represent in the parties in this matter. No conflict has been raised. No, nothing. So, the. So, we come to, and I could go through all the things that we did in the briefs listing what was reasonable, and why he did what he did, and all the nitpicking. And one of the things I want to raise about this. The question was raised before about discretion. And Mr Shrek had tried to argue in his briefs that this was not a discretionary trust the trustee had no, he had to do whatever Mr Shrek said that trust in the will says, in the meantime, the trustee may use for his benefit. So much of the income and principle as a trustee determines to be required. That's discretionary for the benefit support and education. Initially some things were used because Mr Shrek had sent a letter saying he didn't have a job. They had no savings no money. And Mr. Adcock said, Okay, we'll use it for clothes things like that. And that's not the case anymore. He didn't just abuse any discretion and refusing to use minors trust funds, because it turned out. And it was testified to by Mr Shrek's wife, that at the time they made these additional requests. He was now making $100,000 a year. That's it c 3373 and had personally bought the house they lived in. That's a 3251. So the trustee had merely responded and said, Hey, because you've been bleeding money out of the truck. With all these attorney fees. Please send me a profit or financial statement that shows you can't support the kids. They never did. There's nothing unreasonable about that. As to count three. That was another one that was very simple and straightforward on that. They requested that Mark Adcock be ordered to account to the plans for all transactions made on behalf of ad hoc farms LLC. And the two descendants trust. Again, over our objections because we thought Judge Anderson was granting them the relief they asked for account three, and we've shown factually forget about the request, the affirmative defenses they didn't answer. Even without those, we went on that because we showed why they were not entitled to accountings on these trucks, but nonetheless Judge Anderson ordered. And at that time, both my client Mark Adcock is a trust co trustee, because Mr Shrek's wife was also a co trustee of the trust for the descendants trust ordered and ordered a James Adcock, the father who was the manager for ad hoc farms and dealt with the trust to produce accountings. That was done. There were no issues about those accountings. And in fact, Mr Shrek admitted that, again, he admitted it is July 20 2018 deposition. All was accounted for regarding the descendants trust. His answer to a question about, do you have everything for a complete accounting was quote, some of the documentation we received isn't everything that I think should be there, but it seems to be at least all accounted for. That's a C 325. I'm sorry, see 3225. When he wanted to file his fourth amended complaint. And as to why he had voluntarily dismissed the third count as to eat James Adcock. He said that because of receiving the accounting, the documents we were looking for, for the farm. This is in our 80. And he said in fact we've removed one count because now we've gotten the documentation that we were seeking in the accounting for the descendants trust. That's an hour at two. So, what did Judge Anderson do. Judge Anderson entered an order. Simply, and based on no question of material fact that. And I just shuffled my cards here a second, I'm sorry. Plato's are not entitled to any further documents and information beyond what they already have. Count one they got what they asked for. They got an accounting of all transactions count three they got an accounting of all transactions, no material question of fact on those on Mark Adcock, in terms of any breach of fiduciary duty. The judge found after going through all the reams and reams of this and everything that there had been no damages. And one of your honors observed asking the question that what was there that said he could not. What is the measuring stick. The measuring stick. Mr Shrek couldn't answer. It's by what's in the trust document, and the law, which Mr. Adcock testified he was familiar with, and it attempted to follow the trust document you mean the will. Yeah, I'm sorry, the trust portion of the will. There was one paragraph in the will that created that trust. And I cited that before. So, and I'm not sure I didn't catch the site of the case Mr Shrek was referring to about saying there's some case that says a trustee has to has to consult with the beneficiaries of the trust. I missed that name. I'm not familiar with that. I don't know if that was even put in the briefs. And about the insurance issue. I put in the record, the letter from Mr Shrek that says, I don't have a job we don't have savings we don't have this. It is your fiduciary obligation to provide for the support of the kids. My client said okay, and we showed in the record, my client to his attorney at the time, came back to Mr Shrek and said all right, I'm going to get them blue cross blue shield insurance, which he had checked out and found would cover everything. And if almost everything and if it didn't, the trust would pay for the balance. No response from Mr Shrek. There was a follow up to him saying that was sent to his employer ex employer at the time former employer that we're going to do this. So, in summary, they got everything they wanted my client didn't do anything wrong. The judge had a chance to observe both Mr Shrek and Mr adcock, not only in court, but also under a microscope with everything that was done about Mr adcock and determine there was no basis for summary judgment in favor of the defendant. I'm sorry, in favor of the plaintiff, but in favor of the defendant. Thank you. Thank you, Mr McClellan. Mr Shrek any rebuttal. Just, just a minute, your, your microphone needs to be unmuted. Oh, I apologize. Not a problem. Go. Obviously I did not have an opportunity to go through all of our arguments but I wanted to take the opportunity to respond to some of the things that Council just said. Although there may be some technical issues as far as count one is concerned, obviously the crux of this case is count to which is the seeking the removal of Mr adcock is the benefit of the trustee. The trial courts order specifically said that the court grants me judgment in favor of Mark adcock and against plaintiffs plaintiffs have failed to show they have been damaged by a breach of fiduciary duties. My reading of that order makes it very unclear as to whether or not the trial court was saying that there was no breach at all, such there's no damages, or that there was a breach, but there was no damage is shown. We as submitted in our briefs and as I stated earlier today for, for those reasons and many more. We believe that he has breached the duty. As far as the damages concerns. There are numerous that we have laid out in our briefs. One would be the attorneys fees for the loan difference what they would have earned otherwise for the loan so that's one set of damages. Okay. Some of these are smaller. Mr. Adcock refused to return things the kids didn't need and didn't refund them back to the trust and they want to waste. Third, some of the accountings that he had. Yes, he's entitled to retain counsel but he also has to be reasonable and what he's having the council do. For example, the initial county was $8,000 to do something that they have claimed is very simple. And then subsequent accountings were substantially less but they were still $1,000 more. So, he's been, in our opinion, very loose with the spending. What about the costs of those kinds of things. I understand your honor. What do you know about the costs of those kinds of things the usual unexpected costs. Well, I've had to do other types of things that are similar to that for my clients. And with the documents that were presented initially, because of the format which they did it would not have taken 22 to 23 hours to come up with a little tiny little box where you said, so many dollars here there is, quite frankly, is for what they charge and the amount of time they spent looking at it. I think anybody would customarily look at that and say that was too much. The other issue is your personal opinion. Are you relying on anything other than your personal opinion. I'm relying on my practice as an attorney my, quite frankly, common sense, just by the actual documents they provided us. There's no way that would have been reasonable. As far as that initial attorney. They also defend it failed to obtain the balance of the retainer at least based upon the documents that we've been provided, as we pointed out in the record. In addition, during the course of this litigation. There's three different counts. to defend that aspect, it should have been split in some way. And, and the cost, based upon what's in the record and, quite frankly, things I've had since then is substantial, the cost of this litigation. In addition, had it not been for the plaintiffs. There could have been other costs, because Mr Adcock obviously didn't understand some of the things that he had set up specifically with the bright futures direction they were going to deposit a lot of the entire amount from the loans in that. And it would have greatly exceeded what would have been acquired because Mr Adcock, the plaintiffs and a financial advisor specifically figured out shortly before then, it's beginning when these trusts started what needed to be there, and why that amount would have been, they had put that additional money in there they would have been a 10% penalty for anything that was not used for education, and that would have been substantial penalties, considering the amounts that we're talking about $50,000 plus interest over over several years. And then the last thing I want to mention is count three. The court may have indicated that we've got some documentation at one point when I was going to dismiss it that I had that documentation but things have changed over time. And we don't have that continuing obligation and we think the brief speak for themselves as to why we're entitled to that both one is a trustee for for Jamie Adcock, as well as for the minors because they're beneficiaries, and if they were not beneficiaries, the trust would fail because Mr Adcock Jim Adcock is a manager not a beneficiary. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement. I'm sorry, do you have a question. Your Honor, because much of what Mr Shrek just said was not rebuttal it was new. Could I possibly have one minute just to point out to the court where those things are in the briefs place. Do you have any objection. Yes, you may have one minute. Thank you, Your Honor. So, in terms of the all these costs and everything else he's referred to. We've gone through the, the, in our reply, I'm sorry, in our appellees brief and set forth how all of those are not true. And as your honors know, also, it's a very high standard to remove a trustee, and that we cited the case law that makes it clear that, you know, some mistakes or things like that are not grounds for that. The review of the judges denial of removing a trustee is under abuse of discretion. There's no information, anything to show that Judge Anderson abused his discretion in this matter. After carefully reviewing all these matters. Quite frankly, the only damage to the trust have been the attorney fees have been had to be expended because of Mr Shrek's actions, and would simply ask the court to end this now, and this issue about continuing duty. That's not what he asked for the minors if he wants to bring that up we've been doing an accounting every year, and our position is still they weren't entitled to it on the farm, the judge found no material questions of fact, on the complaint, whether or what Mr Shrek wanted to play. Thank you. Thank you. Okay, we will take the matter under advisement. We will consult with Justice Holdridge, and we'll issue a written decision as quickly as possible. The court will stand in recess until 130.